The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Peter C. Kavanaugh presiding. We'll next call 4-23-0004, People of the State of Illinois, Appellee v. Aaron Lambert. Appellant, Counsel for the Appellant, would you please state your full name for the record? Amy Kemp. Thank you, and for Appellee? Allison Page-Brooks. Very well. Counsel, you may proceed. Amy Kemp. Good afternoon. May it please the Court, Counsel. My name is Amy Kemp. I work at the Office of the State Appellate Defender, and I represent the Appellant, Aaron Lambert. Our system of criminal justice entrusts jurors with profoundly important determinations, even in cases like this one, where decades of the defendant's liberty hang in the balance. But a jury's determinations are only as reliable as the body of evidence is whole. Here, the State itself had admitted a data extraction report replete with evidence that the jury needed in order to assess the credibility of the complainant, M.B., and her family members. Evidence that the jury needed in order to draw reasonable inferences and fill in the blanks in a classic he-said-she-said. Yet due to an evidentiary error by the trial court and constitutionally deficient performance by trial counsel, the jury was kept ignorant of that evidence. We know what the jury did not. The report contains compelling evidence that M.B., not Aaron, sent the disclaimed messages. Compelling evidence of lie after lie after lie. Counsel, let me, I have some questions for you, and I'll begin with an apology. I'm not very technologically astute, so when I ask these questions, I don't know how this all works, and hopefully you can help me. If I understand correctly, there were screenshots of text messages between Chrissy, M.A.B.'s mother, and M.A.B.'s phone, messages during the early morning hours of May 11th. Is that correct? I wouldn't describe what the state admitted as screenshots. There were photographs admitted of an unidentified hand holding a phone displaying the messages. And those were of People's Exhibits 4, 5, and 6, containing these various messages that the state maintains the defendant sent to Chrissy in response to her messages sent to him. M.A.B.'s phone, is that right? The state's contention is that the defendant sent those messages from M.B.'s passcode-protected phone, correct. And by the way, digressing from where I'm going with the rest of my question, but just so I understand your theory, is it your position that these messages weren't, is it the defendant's position these weren't sent from the defendant at all, that they were sent from M.A.B.? It's Aaron's position that the evidence that was kept from the jury supports a reasonable inference that M.B. herself sent the messages, not Aaron. So the answer to my question is yes. The defendant's position is, well, one or two people had to send them, either M.A.B. or the defendant. The defendant is maintaining an appeal. It was M.A.B., right? Well, defendant is maintaining on appeal that the jury didn't have the evidence it needed in order to weigh the state's theory that M.B., excuse me, that Aaron had sent the messages. If the jury had heard that, the defendant would have been arguing that M.A.B. sent these messages herself, is that right? Correct. Okay. Now, then there's this Exhibit 24, which contains, do I understand this correctly, the extracted messages? What is the term? The data extraction report. So it's a very large PDF file that is essentially a summary of that was used to perform the data extraction. Additionally, on the Blu-ray disc that was admitted as State's Exhibit 24 are all of the underlying files that were used to produce the data extraction report. So each individual- I'm just pausing right there. What you just said, I don't know what that means. What are these underlying files referring to? Each individual photo, SMS message, video, web history search, thumbnails from- Okay, so let me ask it this way then. Is my understanding then correct based on what you said that People's Exhibit 24, this extracted data, is that the term contains everything that was on MAB's phone, including the, I guess, three messages that were Exhibits 4, 5, and 6? Everything that was on MAB's phone that was captured by the data extraction report. So we don't know exactly what the parameters, like what dates the report captured and so on. But correct, the messages that were admitted by the State through the photographs of the hands holding the phones were in the data extraction report as well. Okay, so they were also there. So essentially there were two bases for these, the data extraction and the photographs. Correct. I would note that the data extraction report truncates messages, so very long messages will be cut off or sometimes if emojis or strange characters are used, the data extraction report doesn't depict them. And so I think that's why the State took the step of using photographs of the phone with, you know, the hand with the phone in those instances to get the complete messages as opposed to the truncated versions captured by the report. This group exhibit, the extracted stuff, was People's Exhibit 24, right? The Blu-ray disc containing the raw data and the data extraction report, correct. And it was on that group exhibit, the extracted report, that the material period that you said the jury should have heard, that the defendant argued about the difference of you and you and all the rest, that was on the extracted report, People's Exhibit 24, the State objected and the court wouldn't let that come in, is that right? Correct. The State objected to the good morning, beautiful message specifically, but the balance of what I've termed silent evidence, the bulk of the not Aaron sent the disclaimed messages, was never addressed at trial. Defense counsel didn't attempt to use it. I'm not sure, just pause it right there. Other than this one message that you're referring to where you wanted to bring out the language of the, I forget the message, the you as opposed to a you, you're beautiful, that business. Was there something else in the extracted material that the defense sought to introduce or should have sought to introduce? Yes, there was a mountain of evidence that the defense should have introduced. I'm not sure introduced is actually the best word for me to use there because it was already admitted. So the defense could have questioned witnesses about it or used it in other ways because it was already admitted state's evidence. Do we know what that other stuff was? Yes. And I have covered that extensively in the briefing. I could refer you to the specific pages if that would be helpful. Yeah, go ahead. But describe it generally. It's been a while since there was. I think the most powerful evidence that is among the silent evidence that defense counsel didn't try to use and should have is the exchange of messages and an outgoing phone call from MB's phone at the precise time that these disclaim messages are being sent to Chrissy and Markeisha, the mother and sister from MB's phone. So at the same time and literally interspersed with those messages is this exchange of text messages with someone that MB had saved as Andy, where they're kind of flirting back and forth, where MB is coming to him with a story about how she lost her key and needs money for a replacement key and essentially trying to get Andy to give her money to pay for that key. So that was that before the alleged assault on the 11th? No, it's after it's during the period of time where MB claims Aaron had exclusive possession of her phone and she was, you know, a silent captive either in his apartment or his vehicle. The timing is a little squishy, but this is several hours after the alleged assault. Well, so I understand the defense position on this. Were there dozens or hundreds of different entries on this extracted data document, Exhibit 24? I'm not sure what you mean by entries. Separate items shown. Yes, the report is close to 20,000 pages long. So there are, you know. Well, when the state offered Exhibit 24, did it explain for what purpose it was making the offer? No, the state offered the exhibit, which was the Blu-ray disc containing the entire data extraction report and all of the underlying data without qualification. The trial court admitted it without limitation. What was the defense position on that? No objection. Okay. So is it your position then on appeal that all 2,000 pages or whatever it was, entries, were then admissible and could be read to the jury? Were admitted, not just admissible, but were. Well, you see, you know, now we're talking about differences here. We have a group exhibit that's been received and admitted. Does that mean that everything on that group exhibit is relevant and should go to the jury or be read to the jury just because it's been admitted without any discussion pertaining thereto? It means it's admitted state's evidence that can be used by the other party for any purpose. To the extent the state wished to admit the exhibit in some smaller part or with the qualification that, you know, this is meant just as the, I don't know, the authentication of these disclaimed messages and for no other reason. Well, the reason I'm asking, it seems to me that perhaps the lawyers were a little bit sloppy here and Judge McGraw picked up on it, but the state is offering this exhibit containing these hundreds of different things because it contains a few things that the state thinks are significant, which match the earlier exhibits. And there was no objection. The court has no occasion to rule on it. But it seems to me that Judge McGraw is exactly right. When the defense wants to introduce a bunch of statements from the defendant on this exhibit, that the defendant can't normally do that. He would have to testify to it. It's all hearsay. And the only way around that you're saying is, well, this is the state's exhibit. It's been admitted seemingly for all purposes. Does that mean that the defense could say, Judge, we're now going to read the following 2000 items from this extraction without the courts being able to make a determination whether that's appropriate? Justice Steigman, with respect, that's not the argument. There's an alternative basis for admissibility of the good morning, beautiful message, aside from the fact that it's admitted evidence, which is that it's not hearsay. There are no, it was not offered to prove the matter asserted therein. Therefore, it is no relevance otherwise. But you're admitting it to show this is not how he talks. Isn't that right? The matter asserted within the good morning, beautiful message. May I read the message? I got it right in front of me. Good morning, beautiful. Thinking about you. Okay. So the only matter asserted in that message is think about you. There is no relevance to the matter asserted. The relevance is that the message was sent, the manner of expression, the you versus you, the fact that it was deleted by MB before she handed over her phone to the police for data extraction. So the purpose for which it was offered was not to prove what was asserted in the message. Furthermore, Your Honor, most of what I'm talking about here, the good morning, beautiful message for a moment and looking at the balance of the silent evidence, none of that was the defendant talking. This is MB talking. This is MB sending text messages at the time that she says that Aaron had her phone. This is MB using the peculiar non-standard word lefted, dozens and dozens and dozens of times over months of communications captured by the data extraction report. Now that word lefted, which again is very unusual, lefted. So instead of as the simple past tense of the verb leave, MB says habitually lefted. And that word lefted appears in one of the disclaimed messages. There's an exchange between MB and her sister Marquisha during the period of time where both Marquisha and Chrissy testify that Marquisha was sitting at the hospital with MB. That proves definitively that Marquisha was not in fact at the hospital with MB. Marquisha was sitting at home at Chrissy's house. So it shows that both Chrissy and Marquisha lied under oath. That's not a hearsay exchange. It didn't involve the defendant. So most of this evidence, the silent evidence is completely independent of the defendant and only sheds light on MB and her supposed eyewitnesses. They certainly are relevant to the matter at issue here, which is again, the state's case fairly hinges on Aaron's authorship of the disclaimed messages. These are messages that were sent from MB's passcode protected phone. And so all of the evidence that appears on the data extraction report to support at the very least support a reasonable inference that MB herself sent the disclaimed messages is powerfully relevant to this case, to the defendant's guilt or innocence. And the jury didn't hear any of it. So was this sloppiness? Probably. Probably there was some sloppiness at play, but the state's sloppiness in introducing a ream of evidence, some of which it wanted the jury to hear and other parts of which it either didn't know about or didn't want the jury to hear, that inures to the defense benefit. Once the state has admitted that evidence to say, well, the state can use those parts of it that were beneficial to its case, but we'll call the rest of it inadmissible, even though it's already been admitted, just because it's helpful to the defendant. I don't think that that's supported in the case law. We see... Counsel, if, excuse me, if I could interrupt. Part of what the defendant raised, though, at trial when this issue was, I'll say, brought back before the judge, they were wanting to recall Boos to testify. That's what the, that was the purpose of that. They were going to have, recall her to have her testify about messages in the extraction. And the purpose of that was to talk about messages between MAB and the defendant, correct? The purpose was to get in, yes, the good morning, beautiful message. But the extraction, I mean, Boots could not have testified, all Boots could ever have testified as they did initially, was that that's what was on the phone. It could not have determined who sent those texts. I mean, that was part of the initial examination, correct? It could have proved both the time and date that the message was received, and most importantly, the phone number from which it was sent. And that phone number was already connected with the defendant. So could Detective Boots get on the stand and say, Aaron himself... It couldn't. It was not any different though, than the other text messages and the argument that would have been made from the defendant's perspective is he didn't send those texts. So it's just another text that he did not, he arguably would argue he did not send, correct? No, Justice Leonard, the messages that Aaron claimed not to have sent are from MB's phone, from MB's phone number. The good morning, beautiful message is from a phone number directly connected with Aaron to MB's phone. After the fact. After the fact, the next morning, or the, excuse me, essentially 24 hours after they would have parted ways on the morning after either consensual sex or sex assault. Yes. So all Detective Boots needed to get on the stand and say is here's the content of the message. If I may briefly conclude. Please. Here's the content of the message. Here's the date and time at which it was received. Here's the phone number from which it was received because there was already testimony in the record connecting that phone number to Aaron. Thank you. Thank you, counsel. You will have time in rebuttal. Okay, Ms. Paige Brooks for the appellee. It's my last name is Brooks, Your Honor. Alison Page is my compound first name. I'm sorry. It's okay. Thanks. That's why I sometimes hyphenate it. May it please the court and counsel. It seems like what the trial court did here was conduct a Cameron hearing, which was proper whenever any sort of out of court statement is being offered for what defendant alleges to be a non hearsay purpose. And so in that situation, the trial court has to weigh both the relevance of the asserted what defense asserts to be the non hearsay purpose versus the potential unfair prejudicial effect on the state's right to a fair trial. And in this case, the asserted relevance was very scant because despite the difference in the use of the word you are just a simple letter you. These were differences in intended recipients and also in purpose of their communications. So therefore, it would not be surprising at all that someone after a day after sexual intercourse is checking on someone would use a more familiar term just with a simple letter you in place of the actual word. And also the differences when these other messages were going out around closer to the time of the incident, basically terrorizing the family members with respect to MB while she was away from them. So there's just the differences here in intended recipients and the purposes of the communication completely account for the difference in the use of the word you versus the letter you. So there's really no asserted relevance for that as a way of trying to prove and what the defense even claims is just an inference that the defendant was not the author of what they called the disclaimed messages that were sent from MB's phone. Also, the counterpart of that is the other part of the balance, which is the potential for unfair prejudice to the state's right to a and where a statement out of court statement has the effect of proving a matter of asserted, then it is still hearsay, even if it's offered for a non hearsay purpose. And so in here, a person who is sort of in a very sort of romantic way, checking on the welfare and calling them beautiful after an episode of sexual intercourse, that has a very strong implication that there was, in fact, consensual intercourse that happened and not non consensual intercourse. This is the tenor of somebody who's checking up after consensual intercourse. So therefore, this message does have a very strong effect of proving the matter asserted, which is essentially the stake in the controversy between the parties, which is whether the intercourse was consensual or not. So this goes to the heart of the controversy and has a very strong effect of this person had consensual intercourse and is checking on their welfare the day afterwards. So that's why it would be objectionable and should not be admitted. What about the other extracted material that was kept made reference to? Well, the the other extracted material that was other statements from MB's phone versus a statement of what purports to be from the defendant, which, of course, there was the who the author was. And Detective Boots doesn't necessarily know who the author of that is. And there was no offer of proof to try to show that she could have authenticated the defendant as the author. So it's one thing to say that that when Exhibit 24 was put in, it was merely for the purpose of showing that this was the contents of MB's phone. And so authentication is only required to the extent of what is being offered for, which was simply to show that that was on her phone, not who sent the messages that arrived into her phone. So that's why it makes a difference that this was a people's exhibit that had already been offered and received in terms. Well, it might have if the defense had made that argument, but because the defense argument on appeal for the first time on appeal is that the state waived its objection by having admitted the evidence in its own exhibit. If that argument was not made below, then the defense forfeits that argument on appeal. They should have argued that below that the state somehow had waived its right to object to this particular evidence by admitting it in its own case in chief. So that's why it doesn't really matter is because the defendant needed to make that argument below and did not. Counsel, I know in your brief, you do not concede that there was any error. You suggest there wasn't in the fact that the I mean, it was already admitted. It was admitted. And then there was a ruling later on. So to that extent, I guess, if this court were to determine that the. The court's ruling not to permit the defense to make that inquiry, how would you address an argument as to whether that error was harmless? Okay, well, this is dealing with a message that one message that was sent almost a day after the incident. So it doesn't seem to have any sort of probative value as to whether because it's a self-serving statement by the defendant, any defendant who rapes a woman can simply send an unsolicited message the next day, pretending that they had had an episode of consensual intercourse and checking on them and telling them they're beautiful, et cetera. Any rapist could do that to a woman. And if there's no reply from the recipient to somehow show that that would be what actually happened. So I think the jury would have simply viewed this as simply self-serving and that not actually. Given it credence as this is strong evidence that there was, in fact, consensual intercourse the day before. So this is very sort of this is far enough removed from the actual incident to not really be probative of what happened the day before, particularly if there's no interaction or reply from the recipient. This is simply just the defendant's own statement, which cannot be even cross examined. So in that respect, if this was admitted and the parties argued about it to the jury, the fact this is a self-serving statement from the defense with no opportunity to cross examine it, the jury would not have given it much credence at all. This is a little peculiar because we already have the exhibit being admitted. As Ms. Kim pointed out, there's all these entries, if that's the right term, on the Exhibit 24. To what extent is this still a live issue for a trial court when an admitted exhibit, group exhibit containing a bunch of stuff that the state offered for the purpose of bringing out three items, has other items in there such as this statement that you claim was hearsay and properly objected to and restricted, not admitted. How does this work when you're dealing with an exhibit that has already been presented and admitted? Well, the major distinction here is that Detective Boots is going to be questioned and have to testify about statements that were made out of court. So the extraction report is in the evidence, but Detective Boots' testimony is different because that's a different item of evidence. This is a live witness, not a document. Wasn't she going to be called to testify about the good morning, beautiful, thinking about you, okay statement in the extraction? The fact of that particular message's receipt by MB's phone was admitted as part of Exhibit 24, but to be questioned about defendant's authorship of that message was something that was not already admitted into evidence and would have required authentication, which was something the defense did not try to do through an offer of proof after the objection was sustained. So the record still is not clear that this would have been authenticated through Detective Boots, which is what the defense was proposing to do. Well, I suppose that you raise an interesting question. If 24 is already in evidence, what was the need for Detective Boots' testimony at all? Couldn't the defendant's defense counsel just have said, we want to call the jury's attention to this item about the good morning, beautiful message? If the defense attorney could have cited an enclosing argument, for example, or made a motion to publish, for example, which the trial court then would have had to weigh as an alternative, say, recalling Detective Boots, but that's not what the defense did. And to the extent the defense attorney did not do so, they would have to make a claim of ineffective census counsel, which that's the last issue or one of the other issues that they raised, which is, am I coming through? I'm not sure if I... Yes. Okay, thank you. My screen is getting a little locked up. Before you move on to ineffective assistance, and hold on to that, because I just wanted to interject a quick question. With regard to admission of the extraction document, isn't it incumbent upon the state to move that be admitted for a limited purpose, maybe take the matter up in limine, if they want to limit the extent of the evidence? The state could have done that. They did not. So I think that's why we're left in the situation where the defense attorney could have made use of the admitted exhibit, but what they actually tried to do was to call a witness to testify about it, which would require attribution of the statements to defend it sending them, which is something that was not included in the exhibit itself. The exhibit didn't have anything to do with who sent the messages that were received by the phone. So that's why that's something in addition. It's a bit of a burden shifting issue, you know. Anyway, continue with your argument. Thank you, your honor. With respect to the issues of trial strategy, the manner of cross-examination, the type of arguments that should have been raised, or what use evidentiary use the attorney should have made, defense attorney should have made about the admitted evidence in exhibit 24. These are all matters that are not apparent from the record on appeal, so that's the type of thing like in the Zambrano case. If it's beyond the scope of the record on a direct appeal, we leave this issue for post-conviction review. So if the defense assertion is basically should have tried to establish that there was a conspiracy of perjury among MB's family and MB herself, that's the type of argument the defense should have made instead of what they tried to do, which because the defense attorney did do a strong job of trying to attack MB's credibility, just didn't do certain other things. So it's not so unsound that the defense attorney entirely failed to subject the state's case to adversarial testing, which is a standard for claims of trial strategy. So in that situation, this has to go to post-conviction review because there's nothing in the record that shows why the defense attorney adopted the strategy that they did and why they didn't make further use of the of the items that were taken from MB's phone. One other question, counsel, I want to make sure I understand your position with regard to the defense request to recall Boots. You're saying that it was designed to establish the defendant as the author of the good morning, beautiful, thinking about you message. Is that your explanation of why the defense wanted to do that? Yes, the defense was trying to establish that they were the author of that message, and they spoke with the letter U instead of Y-O-U. But what would Boots have to offer that would address who is the author of that particular message? In other words, the exhibit's in evidence, and there appears this good morning, beautiful message. And no offer of proof, I guess, was made about what Boots would say. But what would you have said that would have supported the claim that the defendant was the author? I don't know what how they would have tried to establish that it was the author through Boots, but I guess what they're trying to get at was they're trying to attack the identity of the author of the disclaimed messages that were sent from MB's phone. And this message came to MB's in the use of the words like U versus the letter U or the spelled out Y-O-U that they were trying to capitalize on. And so they would have to establish the defendant sent the message the next day as a way of trying to show that the defendant did not send the other message earlier that had the word U spelled out Y-O-U instead of which letter U. That's what the defense was trying to do. It was not relevant enough that was prejudicial to try to admit the defendant's uncross-examined statement, and that gets to the heart of the matter of whether there was consensual intercourse. So that's why it was properly objected to in the trial court upon holding this Cameron hearing, made a proper ruling, and is not an abuse of discretion. Any other questions? Nope. I would just say I'm sorry. Please. I had no further arguments to make if you have no other questions. Thank you. Thank you, your honors. Rebuttal. Thank you. With regard to the good morning beautiful message and the use of U, Y-O-U versus U, with respect, it's not for Ms. Brooks to tell us what that meant, what the significance is, or whether it's reasonable that, you know, the messages sent with the intent to somehow confess to sex assault and taunt and be cruel to Envy's family would use Y-O-U and messages sent to be sweet and kind the next morning would use the letter U. It was for the jury to determine whether there was some significance to the different diction between the disclaim messages and the good morning beautiful message. Let me ask about the question she raised, the point she raised, and that is in this case of criminal sexual assault, there's no question that sexual intercourse occurred, if I understand correctly. The only question is whether it was consensual or not. And Ms. Brooks argues that this is the kind of a message that a rapist might send the next morning to his victim in an effort to try to make himself look better or to try to suggest that what's the term, gaslighting, that that wasn't rape, that was a consensual sexual intercourse, or for some third party reading this message to so conclude. Why isn't she correct? With respect, that statement may be self-serving or may be viewed as potentially self-serving doesn't transform it into hearsay. We have the case of Vanda. There the defendant was asserting, I believe, an insanity defense and sought to use certain letters that he had sent from jail after the offense in which there was delusional thinking, ranting, and so on. And the court found that the letters were potentially self-serving and could have been fabricated by the defendant in an effort to make himself look crazy to support an insanity defense, didn't make the letters hearsay because they weren't offered to prove the truth of the matter asserted in the letter. They were offered to prove the defendant's state of mind. And similarly here, the good morning, beautiful message wasn't offered to prove the truth of the matter asserted in the message. And that's, it's a fine point, but hearsay is defined as a statement that's offered to prove the truth of the matter asserted in the statement that's offered and being challenged as hearsay, not as Ms. Brooks seems to be arguing that because the good morning, beautiful message is evidence of consent and consent is at issue at trial, that makes it hearsay. And that's just not how hearsay is defined. What if the message had said, good morning, beautiful, thinking about you, sex with you yesterday was wonderful. Would that still be admissible? I believe that that would not be challengeable as hearsay because the truth of the matter asserted would be the matter asserted would be, excuse me, but whether the sex was wonderful or not. And that's not why the statement is being offered. So that the, that a statement can be challenged as self-serving doesn't make it hearsay. And that's the square holding of Banda in terms of, and just briefly, I mean, the trial court's ruling did state quote, I think it's appropriate for you to call detective boots to talk about the extraction. And that as part of the extraction, that there were other communications from the defendant's number to the victim, whether they proceed the assault or, or subsequent to the alleged assault, but that can come in, but it's the content that would be hearsay. So just stopping there for a moment, the court was allowing defense counsel, at least that opportunity, but after the ruling defense counsel declined to recall the witness, correct? Correct. And without the content, the good morning, beautiful message can't do what it was meant to do, which is serve as proof that messages as, as. Switching gears just for a minute, because I did have just a couple of other questions that I wanted to briefly get to on the issue of the sufficiency of the evidence. When we look at the statute the language says including, but not limited to the following situations. And so I just wanted to ask you, would you concede that including, but not limited to means that when we're talking about the threat of force, the court is not limited to those specific instances set forth in the statute? If I may answer, I see that my time has expired. Please. I would concede that including, but not limited to would not be an exclusive list or a, a definition that excludes other aspects, not listed. Other questions very well, then the court will take this matter advisement and now stands in recess.